PUBLIC NATIONAL BANK OF NEW YORK ET AL., APPELLANTS, v. PATRIOTIC INSURANCE COMPANY OF AMERICA, A CORPORATION, RESPONDENT.

PUBLIC NATIONAL BANK OF NEW YORK ET AL., APPELLANTS, v. NEW BRUNSWICK FIRE INSURANCE COMPANY OF NEW BRUNSWICK, A CORPORATION, RESPONDENT.

PUBLIC NATIONAL BANK OF NEW YORK ET AL., APPELLANTS, v. AGRICULTURAL INSURANCE COMPANY OF WATERTOWN, NEW YORK, RESPONDENT.

PUBLIC NATIONAL BANK OF NEW YORK ET AL., APPELLANTS, v. PACIFIC FIRE INSURANCE COMPANY, A CORPORATION, RESPONDENT.

PUBLIC NATIONAL BANK OF NEW YORK ET AL., APPELLANTS, v. IMPORTERS AND EXPORTERS INSURANCE COMPANY OF NEW YORK, A CORPORATION, RESPONDENT.

PUBLIC NATIONAL BANK OF NEW YORK ET AL., APPELLANTS, v. STUYVESANT INSURANCE COMPANY OF CITY OF NEW YORK, A CORPORATION, RESPONDENT.

Submitted October 26, 1928—Decided February 4, 1929.

For the appellants, *Jacob L. Newman* (*Merritt Lane,* of counsel).

For the respondents, *Arthur T. Vanderbilt.*

The opinion of the court was delivered by

KAYS, J.  These were six suits which were consolidated for the purpose of trial and tried together at the Essex Circuit. The jury rendered a verdict in favor of the defendants and against the plaintiffs.  A rule to show cause was allowed which expressly reserved exceptions taken at the trial.  The rule to show cause was argued before the Supreme Court upon the ground that the verdict of the jury was against the clear

weight of the evidence. This rule was discharged by the Supreme Court. The plaintiffs' appeal here presents thirty-six grounds and is argued as one case.

The facts are as follows: A corporation known as the Specialty Handle Manufacturing Company, Incorporated, was engaged in the business of manufacturing leather specialties at its factory in Newark, New Jersey. The defendants are all insurance companies who issued policies of fire insurance to the Specialty Handle Manufacturing Company, Incorporated, protecting its property against loss by fire. On or about March 1st, 1925, a fire occurred in the said company's plant resulting in a partial destruction of its stock and machinery. Thereupon the Specialty Handle Manufacturing Company, Incorporated, and the adjusters of the various insurance companies met and agreed upon the sound value of the stock in sight and the loss thereon caused by the fire and also agreed upon the sound value of the machinery and fixtures and the loss thereon. They made no agreement, however, in respect to the property absolutely destroyed by the fire for the reason that there was nothing on which to base such an agreement except the books of the company. The total loss sustained by the company as a result of the destruction of the stock and machinery was about $43,000. The Specialty Handle Manufacturing Company, Incorporated, claimed that the property which was entirely destroyed amounted to over $100,000 and it thereupon demanded payment from the insurance companies of that amount in addition to the moneys which had been agreed upon amounting to $43,000. An examination of the company's books by experts of the insurers showed that the property absolutely destroyed by the fire was much less than the amount claimed by the Specialty Handle Manufacturing Company, Incorporated. This company endeavored to explain the discrepancy between its claim and its books by stating that it had doctored its books to show a much less value of its property than it actually had. The company admitted that the reason it doctored its books was to defraud the United States government in the payment of its federal income taxes.

On or about May 18th, 1925, the Specialty Handle Manu-

facturing Company, Incorporated, assigned all its right, title and interest in the insurance policies and all sums due thereunder to the Public National Bank of New York, and the said bank brought these suits against the insurance companies upon their failure to comply with the demand for the moneys alleged to be due for the property which had been absolutely destroyed by fire.

The defendant fire insurance companies justify their refusal to pay upon a provision in each of the policies which reads as follows: "This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof; or if the interest of the insured in the property be not truly stated herein; or in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss." The main defense was that this fraud, which the Specialty Handle Manufacturing Company, Incorporated, had attempted to perpetrate upon the United States government in order to escape payment of its income tax, vitiated the policies of insurance. This question was submitted to the jury and the jury found a verdict in favor of the defendants. The first twenty grounds of appeal were directed at the ruling of the court on evidence. The other sixteen grounds for reversal are directed at the refusal to charge certain requests submitted to the court by the plaintiffs or the charging of certain requests submitted by the defendant or the main charge of the court.

The first point argued by counsel for the appellants is that the court permitted against the objection of counsel, the witness, Russell, who was a fire insurance adjuster representing the insurers, to answer the following question: "Q. Did you find any evidence of goods or personal property which had been rendered indistinguishable by reason of the fire?" "A. Not to any extent." Counsel argues that the question called for expert testimony and that the witness had not qualified as such. It does not require an expert to answer this question. The witness had been on the ground of the fire and observed the conditions and could properly testify as to what he saw.

The next point raised is that *Exhibit D* 16, which is the schedule furnished by Miller and Maltbie, adjusters for the assured, should not have been admitted in evidence by the court. This was a schedule of the merchandise which was entirely burned or partially so as a result of the fire. There must have been some purpose or reason for submitting this schedule to the insurance companies and the insurance companies naturally took notice of the schedule so submitted to them as to whether or not it was accurate. Therefore the trial court properly admitted this schedule in evidence, even though as counsel argues, it was not required by the policy. There is no evidence to show that the adjusters went beyond the instructions of the specialty company in submitting this document to the insurance companies. In connection with this schedule counsel says that the company's officers who knew of the submission of this schedule were not aware that the figures contained in it were untrue. This of course would be a matter for the jury to determine. Counsel also says that the court erred in drawing the jury's attention to the fact that there was no evidence that the assured or its representatives ever withdrew this schedule. There appears nothing in the argument which denies this fact and it is therefore a circumstance which could properly be considered by the jury. Whether or not the making of the schedule was fraudulent and whether the assured afterward discovered it to be erroneous and did or did not cause the schedule to be withdrawn, were questions for the jury.

The third point argued is that the trial court erred in permitting certain witnesses to testify concerning certain checks which on the books of the company were recorded as payments for merchandise, when in fact they were either exchange checks or entirely fictitious, having no relationship whatever to merchandise purchases. Appellants also, under this point, complain because the trial court allowed an accountant who had gone over the books of the assured to testify as to the amount of money drawn for the personal use of one of the officers of the specialty company which on the books of the company was charged to labor. It appears from the evidence

that the accountant, representing the defendant companies, called upon the officers of the assured and obtained their books of account for his examination. The provisions of the policy required the assured to submit for the examination of the insurance companies, books of account and other evidence when requested. When these books showed fictitious entries it was proper to show in connection with them the true facts concerning such entries. Therefore the trial court properly allowed witnesses who had received checks representing such entries to testify for the purpose of showing that the books of account which had been submitted to the insurance companies were not correct or did not truly show the amount of labor and material used in the manufacture of goods on hand at the time of the fire.

The fourth point argued by the appellant is that the court below erroneously charged the jury as follows: "It is no excuse or justification to the charge of fraud and false swearing, in violation of the clause of the insurance policies, which I have just read for the assured to say that it did not mean thereby to prejudice the insurers but merely to promote its own interest in evading federal income taxes." This was a proper charge. While the assured by doctoring its books may not have intended to prejudice the insurers it was for the jury to say whether or not by such false swearing or false statements there had been a fraud practiced by the assured upon the insurance companies no matter what the original purpose or intent of such false swearing or false statements may have been. Under this point it is further argued that the court erred in refusing to charge as follows: "Unless the books or false statements were, in fact, used with intent to prejudice the insurance companies (and the burden is on the defendant to prove that they were so used) the plaintiff cannot be prevented from recovering the actual loss which may have been proven notwithstanding the fact that entries in the books and statements taken therefrom may be fictitious." The court sufficiently covered this request in its charge as follows: "The mere proof of facts that the books were improperly or falsely kept is not sufficient to sustain this defense." Referring to the defense of the insurance company of fraud on the part of

the assured, the court charged: "We are not concerned with any question of the defrauding of the United States government. This is beside the case; whether they defrauded the government or not is no concern of ours. \* \* \* The fraud or false swearing must be as to a fact or circumstance and must be material as to the rights and liability of the defendant companies; they must be willful and made with intent to misrepresent." And again the court said: "The defendants here present what we call an affirmative defense of fraud and false swearing as a breach of the terms of the policy. The burden of proving this defense is upon the defendants. They must sustain it by a fair preponderance of the evidence."

The fifth point argued by the appellant deals first with the testimony of Emil Garfinkel, secretary and treasurer of the specialty company, when he was called to the stand by the defendants. First, because the court permitted Garfinkel to answer the following question: "*Q.* Were you asked these questions and did you make these answers in the examination under oath?" The purpose of this question was to bring out the facts which Garfinkel had formerly stated under oath and not to impeach his testimony. This was a proper question under the circumstances. Appellant also complains because the court refused to strike out certain testimony of Garfinkel when testifying as a witness for the defendants when he was asked if he did not give certain testimony under oath relative to moneys which had been drawn out from the specialty company's account which had a bearing upon the condition of the specialty company's book accounts. This revealed that for several years Garfinkel had drawn checks for his personal use which had been charged to purchases of merchandise or for labor. This naturally tended to swell the book inventory beyond the actual amount on hand. Under these circumstances such testimony was proper. The other questions asked this witness which were allowed by the court and to which the appellant objects, deal with the same character of testimony. That is, as to whether or not the statements which Garfinkel had made under oath at a previous time were or were not true when made. This testimony was proper as it had a direct bearing upon the doctoring of the books of the company.

Questions asked Garfinkel by the defendant which were objected to by appellant were not for the purpose of repudiating his statements under oath but to confirm them and when confronted by his former statement under oath the truth of the facts were brought out. The purpose of this testimony was not an attack upon the witness' truth and veracity but was for the purpose of bringing out the correct state of facts.

The sixth point argued by the appellant is relative to the charge of the court as follows: "The policies of insurance in this suit are in the standard form prescribed by the legislature of New Jersey, which had also prescribed that no other or different form shall be used. The contract of insurance therefore being one prescribed by the legislature is to be construed by you according to the true and natural meaning of the words of the policy as if it were a contract between two individuals or two ordinary corporations, and it is therefore incumbent upon you to apply the interpretation of the policy provisions according to the instructions of the court and not to modify them either in favor of the plainiff or of the defendant insurance companies." Counsel for appellant contends that the language used by the court in this charge, to wit: "Is to be construed by you according to the true and natural meaning of the words of the policy," was erroneous for the reason that the jury would infer from this instruction that it was its province to construe the written contract. We do not think that the court used the word "construed" in its legal sense as the court told the jury it was incumbent upon them to apply the interpretation of the policy provisions according to the instructions of the court and not to modify them in favor of the plaintiffs or the defendants. We think the court used the word "construed" in that portion of his charge as meaning "regarded" or "considered." When counsel for the appellant noticed this language used by the court in his charge if there was any doubt in counsels mind as to the meaning of the word "construed" or as to the interpretation which the jury might put upon it, it was the duty of counsel to call the court's attention to the same. This portion of the charge when read in connection with other parts of the charge above referred to and also that part in which the judge instructed the jury as

follows: "You are here to decide the facts. You are the judges of the facts in this case. My duty is to charge you and tell you what the rules of law are which should govern you in determining the case and in arriving at a verdict," made it sufficiently clear to the jury and the jury could not have failed under these instructions to understand their duty in respect to determining the facts and the application of them to the principles of law which were properly laid down by the court. This court laid down the rule in the case of *Lenz* v. *Public Service Railway Co.*, 98 *N. J. L.* 849, as follows:

"So long as the law is stated correctly and intelligently, the ultimate test of the soundness of instructions is, not what the ingenuity of counsel can, at leisure, work out the instructions to mean, but how and in what sense, under the evidence before them and circumstances of the trial, would ordinary men and jurors understand the instructions as a whole."

"The inquiry should be whether the jury would have been misled to the injury of the defendant by the language of the court, and in this case we think it clear, in view of the context, that they could not have been misled by the charge as an entirety."

We are therefore of the opinion that the rulings of the court which are complained of and argued by counsel for the appellant were proper rulings and were not harmful to the plaintiff, and we are also of the opinion that the requests to charge made by the appellant, which were refused by the court below, were properly refused so far as they were not charged in effect, and that the requests made by the defendant which were charged by the court below were properly charged. The grounds of appeal relied upon by the appellant do not disclose any prejudicial error and the judgment under review is affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TREN-CHARD, PARKER, KALISCH, KATZENBACH, CAMPBELL, LLOYD, WHITE, VAN BUSKIRK, MCGLENNON, KAYS, HETFIELD, DEAR, JJ. 14.

*For reversal*—None.